IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

SHAREZA WILKERSON,

        Plaintiff,                      CASE NO.:

v.

DENTAQUEST, LLC

        Defendant.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, Shareza Wilkerson (hereafter "Plaintiff" or "Mrs. Wilkerson"), by and through the undersigned counsel, and files this Complaint for damages against Defendant, DentaQuest, LLC (hereafter "Defendant" or DentaQuest"), and in support states the following:

## NATURE OF COMPLAINT

1. This is an action for employment discrimination.

2. This action seeks declaratory relief and damages for Defendant's unlawful employment discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. §§ 2000e. *et seq.* (hereafter "Title VII"), as amended by the Civil Rights Act of 1991.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

5. Defendant is actively engaging in business within the Southern District of Florida. Additionally, a substantial portion of the facts and circumstances alleged in this Complaint occurred in this District.

6. Therefore, pursuant to 28 U.S.C. § 1391, venue is appropriate in this Court.

## PARTIES

7. Plaintiff, Shareza Wilkerson ("Plaintiff" and/or "Mrs. Wilkerson"), is a Black female residing in Miami-Dade County, Florida and is otherwise *sui juris*.

8. Defendant, DentaQuest, is qualified and licensed to do business in the State of Florida, and at all times material hereto has conducted business within this District.

9. Plaintiff timely filed her charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC).

10. On February 18, 2021, the EEOC issued Plaintiff her "Notice of Right to Sue" ("Notice") A copy of the Notice is attached as Exhibit A.

11. Plaintiff received the Notice on February 24, 2021.

12. This action is timely in that it is commenced within ninety (90) days of Plaintiff's receipt of the Notice.

## FACTUAL ALLEGATIONS

13. Plaintiff began employment at DentaQuest on July 12, 2010, as a Manager in the Contact Center Operations Department.

14. Dentaquest is an insurance provider for low-income individuals who are Medicaid and Medicare eligible and seeking dental coverage.

15. Dentaquest serves the majority of its patients through contracts with government entities in low-income communities.

16. Dentaquest is automatically selected as the dental plan for children and adults who are eligible for Medicaid.

17. Dentaquest's insurance plans are available through the services of local independent medical providers.

18. Plaintiff was responsible for overseeing the daily operation of the Florida Center.

19. Specifically, Plaintiff determined call center operational strategies by conducting needs assessments, performance reviews, capacity planning, and cost/benefit analyses.

20. Plaintiff's role included meeting call center financial objectives by estimating requirements, preparing an annual budget, scheduling expenditures, analyzing variances, and initiating correction of any adverse performances.

21. When Plaintiff began employment with the Defendant she initially reported to John Conroy, the former Vice President of the Contact Center Operations Department.

22. In January 2019, Mr. Conroy was replaced by Kelly Reed, a White female.

23. During this time, Mrs. Wilkerson was the only higher-lever Black Manager.

24. In August of 2019, Ms. Reed assigned Patrick McDermott, a White male supervisor out of Milwaukee to oversee Mrs. Wilkerson's her department, without explanation or reason.

25. Mr. McDermott held the same level and position as Mrs. Wilkerson, yet he was based in a Milwaukee at a separate and distinct center.

26. At the time, no other managers at Mrs. Wilkerson's level were given a supervisor to monitor and oversee their work.

27. Ms. Reed singled Mrs. Wilkerson out in front of other managers for unnecessary and improper reasons.

28. Plaintiff informed HR about Ms. Reed's actions August 2019 and no actions were taken to address the racial targeting by Ms. Reed.

29. For instance, Ms. Reed accused Mrs. Wilkerson of causing over $800,000 in delinquent invoices. This claim was false.

30. Ultimately, Ms. Reed admitted that there was only $50,000 remaining in delinquent invoices.

31. Ms. Reed would single out Mrs. Wilkerson on group chats with other managers for not being present on the chat when Ms. Reed knew that Mrs. Wilkerson was at Company mandated Leadership Program events. Claiming that Mrs. Wilkerson did not provide advance notice yet there were numerous email and calendar reminders sent directly to Ms. Reed by Mrs. Wilkerson.

32. Plaintiff once again contacted HR in September 2019 to report Ms. Reed's actions of racial discrimination. Ms. Reed did not acknowledge or address any of Plaintiff's factual accounts of being singled out and humiliated in the presence of other colleagues.

33. Ms. Reed also falsely claimed that Mrs. Wilkerson did not attend a mandatory company training in Milwaukee although there were team messages and pictures of Mrs. Wilkerson and Milwaukee employees on the date in question. Ms. Reed would ignore requests made by Mrs. Wilkerson to meet in person in discuss Mrs. Wilkerson's complaints even requests via email when Human resources representatives were carbon copied.

34. Ms. Reed would question every project in which Mrs. Wilkerson was in charge.

35. Ms. Reed did not question every project of similarly situated non-Black employees.

36. Ms. Reed canceled scheduled training sessions for Mrs. Wilkerson's team and yet scheduled training sessions for Mr. McDermott's and Mrs. Wilkerson's white counterpart's teams for the same training sessions Mrs. Wilkerson's team had canceled only hours before.

37. In October of 2019, Ms. Reed celebrated a White colleague for suggesting a Saturday team meeting, however, upon learning that the idea was Mrs. Wilkerson's, Ms. Reed became angry and invited everyone but Mrs. Wilkerson to the meeting.

38. Again, On October 9, 2019, Mrs. Wilkerson reported Ms. Reed's continuing and on-going discriminatory conduct to Human Resources.

39. On October 10, 2019, immediately following the complaint to Human Resources, Ms. Reed began retaliating against Mrs. Wilkerson.

40. Specifically, Ms. Reed began contacting Mrs. Wilkerson's subordinates and requesting Plaintiff's reporting supervisors to perform tasks reserved for and would normally be authorized by Mrs. Wilkerson (i.e. run and pull reports on performance of the Center).

41. Ms. Reed's actions are a direct violation of the reporting structure and were undertaken to marginalize and undercut Mrs. Wilkerson's authority.

42. According to Dentaquest's order of communication, each center has an assigned Center Manager.

43. The Center Manager has several supervisors, and the supervisors have team leaders who are assigned to aid the call center representatives.

44. Regional supervisors like Ms. Reed are to communicate with Center Managers for any concerns with their center. The Center Manager then provides a report or "project" to determine how to address and correct the concern.

45. Ms. Reed consistently by-passed the protocol for communication by not communicating directly with Mrs. Wilkerson and requesting projects be completed by Mrs. Wilkerson's supervisors.

46.     On several occasions, Ms. Reed by-passed Mrs. Wilkerson and ordered the Florida Center Supervisors to conduct projects that would only lead to delays and phone congestion as they would not be available to their team leads and call center representatives when calls were escalated.

47.     Mrs. Wilkerson had a planned and approved vacation over the 2019/2020 New Year's holiday.

48.     In anticipation of the upcoming time off, Mrs. Wilkerson sent a reminder to Ms. Reed to make her aware of the scheduled time off.

49.     Immediately upon receiving the notification from Mrs. Wilkerson, Ms. Reed sent an email to all managers informing them that they had to be in the office the week of New Year's or they would be disciplined.

50.     Mrs. Wilkerson canceled her vacation plans to abide by Ms. Reed's instructions only to learn that a similarly situated White employee took vacation during this time and was not disciplined.

51.     In early 2020, Mrs. Wilkerson was selected to staff a special project in New York.

52.     Mrs. Wilkerson's responsibility was to select the team members she felt best conveyed their level of excellence for the new project the company was designing. These employees were to be slated to assist Dentaquest New York members with claims and phone calls to increase productivity in the New York Market.

53.     After spending significant time compiling the list of names, Ms. Reed contacted Mrs. Wilkerson's White floor supervisor and had him re-do all of her work, which was not done to similarly situated non-Black employees.

54. January 2020, Ms. Reed encouraged and forced Mrs. Wilkerson's reporting supervisor to be subordinate to Mrs. Wilkerson. This took place after Ms. Reed questioned whether Plaintiff was present in the office. Plaintiff confirmed on three occasions in a matter of an hour that she was physically in the office on January 2, 2020. She confirmed via messaging chat, email and over the phone. Yet, Ms. Reed called a reposting supervisor, Ms. Aguero to have her confirm for the fourth time Mrs. Wilkerson was in-fact in the office.

55. There was no basis for the continued distrust outside of Ms. Reed's core racial bias against Plaintiff.

56. Mrs. Wilkerson's employment performance reviews during the years 2014 – 2018, always were positive and contained successful scores.

57. According to Mrs. Wilkerson's 2018 performance review, her team in Florida lead the way in employee engagement and had the lowest turn-over rate among call center locations.

58. At no time did any of Mrs. Wilkerson's performance reviews contain negative feedback or negative information that would require the direct oversight required by Ms. Reed.

59. Mrs. Wilkerson received raving reviews by the C-Suite employees as well as positive feedback from Dentaquest customers. By way of example:

   a. Senior VP of Operations Angela Kish who stated "I wanted you to know that your hard work and consistently strong performance is being recognized throughout the organization. Thank you for joining the team!"
   b. Angela Kish, "Please take a moment at your leisure to read a compliment sent to Dana Schmitt from an employee in our Florida office. Shareza Jackson is our Call Center Manager in Coral Gables and is doing a great job as exhibited by this compliment as well as her exemplary work."
   c. Mandel, Guy, who also recognized how well she worked with others and her strong leadership skills, "Shareza - you are truly making a difference in our Florida office each and every day. We are glad to have you as part of the DentaQuest family. Thank you."
   d. Dana Schmitt, "It is so often that we get compliments from our callers

    and share with the team that I felt it appropriate to also spotlight the great comments received about this super leader, Shareza Jackson."

e. Sheryl Traylor, "Having spent a few days last week in the Florida office, I also heard great things from our employees about Shareza. She is clearly viewed as a leader within her organization."

f. Mrs. Wilkerson was selected to travel to other locations to teach her practices and policies due to the success of the Florida office under her leadership.

60. During her employment with the Defendant, Plaintiff had not received negative remarks, instead she only received multiple positive performance reviews based on her exemplary work.

61. Ms. Reed was discriminated against Mrs. Wilkerson because Mrs. Wilkerson is Black.

62. Ms. Reed continually treated similarly situated White employees differently.

63. Due to the on-going discrimination, lack of assistance or actions by HR and promise by Ms. Reed on or about June 9, 2020 to demote Mrs. Wilkerson from any managerial position, was tantamount to a firing.

64. As a result of Defendant's discriminatory employment practices, Plaintiff was materially affected in the terms, conditions, or privileges of employment. She could not serve in a managerial position no longer.

65. Plaintiff lost her gainful employment due to defendant's actions in promising demotion would result in loss of income and position.

66. As a result of Defendant's discriminatory employment practices, Plaintiff has suffered and continues to suffer damages.

## **COUNT I – TITLE VII – RACE**

67. Plaintiff incorporates and re-alleges paragraphs 1 through 66 as if fully alleged herein.

68. Defendant's engaging in the pattern of conduct listed in the facts above, taken as a whole, materially, and adversely affected the terms, conditions, or privileges of Mrs. Wilkerson's employment.

69. Defendant has engaged in intentional race discrimination in the terms and conditions of Plaintiff's employment.

70. Defendant's conduct violates Title VII.

71. The Plaintiff has satisfied all statutory pre-requisites for the filing of this action.

72. Defendant's discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer a loss of pay, benefits and prestige.

73. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

74. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federal protected rights, thereby entitling her to punitive damages pursuant.

75. As a consequence of Defendant's discriminatory conduct, the Plaintiff was denied on-going employment, potential promotions, she was unfairly singled out and embarrassed, suffered mental stress and anguish, and had her professional reputation and career opportunities for further advancements damaged.

## **COUNT II – RETALIATION**

76. Plaintiff incorporates and re-alleges paragraphs 1 through 75 of the as if fully alleged herein.

77. Defendant has engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by treating Plaintiff differently immediately after Plaintiff reporting discrimination to Human Resources.

78. The unlawful employment practices described above were intentional.

79. The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of the Plaintiff.

80. As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain, humiliation, and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is hereby entitled to general and compensatory damages in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment as follows:

1. That the Court grant full front pay to the Plaintiff.
2. That the Court grant full back pay to the Plaintiff.
3. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendant's conduct;
4. That the Court grant Plaintiff punitive damages for Defendant's malicious and reckless indifference;
5. That the Court grant Plaintiff all employment benefits she would have enjoyed had she not been discriminated against;
6. That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to Title VII;

7. That the Court grant Plaintiff all other relief the Court deems just and proper; and,

8. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendant from engaging in further discriminatory conduct.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 19th day of May 2021.

>/s/ *Jadinah N. Gustave*
>Jadinah N. Gustave, Esquire
>Counsel for Plaintiff
>The Sejour-Gustave Firm, PLLC
>20801 Biscayne Blvd.. Suite 403
>Aventura, Florida 33180
>Phone: (305) 857-5711
>Primary Email: jngustave@thesgfirm.com
>Secondary Email: admin@thesgfirm.com